IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| PATRICK GREER and ) | |
| TRACEY GREER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 21-cv-2474-MSN-tmp |
| ) | |
| WASTE CONNECTIONS OF TENNESSEE, ) | |
| INC., PATRICK E WATT, and ) | |
| JOHN/JANE DOES 1–5, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF BARRY PEAK AS AN EXPERT WITNESS PURSUANT TO FED. R. EVID. 702**

Before the court is the defendants' motion in limine to exclude the testimony of Barry Peak as an expert witness. (ECF No. 206.) The plaintiffs filed a response on July 31, 2023. (ECF No. 223.) This motion was referred to the undersigned. (ECF No. 250.) After carefully reviewing the entire record, including the expert report, curriculum vitae, and the parties' briefs, the undersigned finds that a hearing is not necessary.  For the reasons below, this motion is DENIED.

The defendants argue that Peak is not qualified under Rule 702 to testify about safety recalls for the 2013 Mack Truck, maintenance of the truck in question, Waste Connections of Tennessee, Inc. ("Waste Connections") mechanic Wesley Martin's

training and supervision, the vehicle condition and inspection reports, the Commercial Vehicle Safety Alliance North American Standard Out-of-Service Criteria, the work order on the subject truck, the Federal Motor Carrier Safety Regulations ("FMCSR"), Waste Connections' "failure to observe, identify and safely repair the open and obvious defects on the 2013 MCK truck," and any lack of training or experience of Waste Connections mechanics. (ECF No. 206 at PageID 4931–32.) The defendants specifically argue that Peak is not qualified as an accident reconstruction expert and that his testimony and report do not conform to the empirical and scientific standards required for accident reconstruction. (Id. at PageID 4932–33.)

The plaintiffs argue that Peak is qualified as an expert because he has a degree in mechanical engineering, is certified by the National Institute for Automotive Service Excellence as a Master Automotive Technician, and has worked as a mechanical engineer and accident reconstructionist since 2009. (ECF No. 223 at PageID 5599.) The plaintiffs also argue that Peak relied upon and reviewed the following in support of his report: (1) post-accident photographs; (2) the truck's work orders for three months prior to the incident; (3) the literature concerning proper inspection criteria and criteria for vehicle defects; (4) the FMCSR regulations and pre-trip and post-trip inspections along with the inspection reports in this case; (5) the National Highway Traffic

Safety Administration's safety recall concerning the spindle nut part; and (6) the deposition testimony of Wesley Martin, a mechanic for Waste Connections. (Id. at PageID 5601.)

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. The rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Courts are tasked with gate-keeping the admissibility of expert testimony. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993). In order to make determinations on admissibility, courts must undertake two inquiries: first, whether the reasoning and methodology underlying the testimony are reliable; and second, whether the reasoning can be properly applied to the facts at hand. Id. at 592-93. To aid with this analysis, the Supreme Court has proposed four factors to consider when analyzing reliability: whether a method has been tested, whether it has been peer reviewed, whether it has a high rate of error,

and whether it is generally accepted within the relevant community. Id. at 592-94. The Supreme Court noted that these factors are not a "definitive checklist or test." Id. at 593. Rather, the determination of reliability is a flexible analysis. Id. "The particular factors will depend upon the unique circumstances of the expert testimony at issue." Birge ex rel. Mickens v. Dollar Gen. Corp., No. 04-2531 B/P, 2006 WL 5175758, at *3 (W.D. Tenn. Sept. 28, 2006).

Peak and Frederick Davidson submitted a joint report detailing their qualifications and the results of their investigation into maintenance and industry standard mechanic practices and how they related to the accident. (ECF No. 206-3 (Peak and Davidson's Expert Report).) As for Peak's qualifications, the report included that he is a certified Master Automotive Technician and is "a Medium/Heavy/Truck Technician certified in brakes in air brake systems." (Id. at PageID 4941.) Further, the report explained that Peak "has investigated thousands of crashes, appeared in numerous depositions and trials, and been qualified as a traffic accident reconstructionist, including testifying regarding mechanical component failure." (Id. at PageID 4941-42.)

Peak provided a numerical list of what served as the basis for the report:

1. The Memphis Police Department crash report number WC2024731 dated September 22, 2020 was reviewed.

2. Six hundred and seventy-six (676) copies of color photographs taken during the inspection of the 2013 MACK truck were reviewed.

3. Inspection notes and summary of the CSI inspection of the 2013 MACK truck were reviewed.

4. National Highway Traffic Safety Administration (NHTSA) vehicle specifications for the 2013 MACK model MRU truck were reviewed.

5. Three hundred thirty-nine (339) copies of color photographs taken during the inspection of the 1997 Ford were reviewed.

6. Inspection notes and summary of the CSI inspection of the 1997 Ford pickup truck were reviewed.

7. NHTSA vehicle specifications for the 1997 Ford Ranger pickup were reviewed.

8. Four hundred six (406) copies of color photographs taken during the site inspection on I-240 in Memphis, Tennessee were reviewed.

9. Scene sketch, diagram and notes from the crash site inspection were reviewed.

10. Fourteen (14) videos from the Ford, MACK and site inspections were reviewed.

11. A reported complete set of Southern Disposal work orders for Vehicle # 06010-324 with VIN 1M2AV02C8DM010041, with dates ranging from October 1, 2015 through December 30, 2020 were reviewed (1,398-pages).

12. The NHTSA.gov website for Recalls & Safety Issues for the 2013 MACK MRU was reviewed.

13. The published NHTSA Campaign Number 13V492000 *Loose Spindle Nuts may cause Hub Separation* dated October 17, 2013 for the 2013 MACK MRU vehicle was reviewed.

14. The published NHTSA Manufacturer Recall Number SC0399, NHTSA Recall 16V-099 reporting the recall status as "RECALL INCOMPLETE" specific to the subject 2013 MACK truck VIN 1M2AV02C8DM010041.

15. Evalue.internationaldelivers.com website Wheel Axle diagram was reviewed (4-pages).

16. Email printout dated October 27, 2020 to Jennifer Daughetry from Howard Manis subject "FW: Greer_Stipulation.DOCX [IWOV-nashdms.FID90629] request to ". . . no further repairs we performed until . . ." was reviewed.

17. Thirty-six (36) additional copies of color photographs of the Ford were reviewed.

18. Sixteen (16) additional copies of color photographs of the MACK, Ford and scene were reviewed.

19. Appendix A: Defendant's Privilege Log was reviewed (1-page).

20. Printed presentation titled "Incident 9/22/2020 – Truck 324 – Patrick Watt = Rear (t)ire comes off truck hits OV" was reviewed (18-pages)

21. Defendant's Supplemental Production – Document Production dated 6.29.22, Bates Stamped 000001 thru 000192 pages were reviewed. Document production included, but was not limited to:

   a. Waste Connections Inc., Commercial Driver Safe Work Practices, included the vehicle condition reports and driver's daily vehicle check;

   b. Waste Connections Inc., Driver Training Program;

   c. Waste Connections Inc., Daily Driver Inspection & Vehicle Condition Reports;

   d. Waste Connections Inc., Motor Vehicle Driver's Certification of Violations/Annual Review of Driving record; and

   e. Acknowledgement of Receipt and Understanding of Waste Connections Driver Policies and Procedures.

>22. Defendants Waste Connection of Tennessee, Inc. and Patrick Watt's Answers to Plaintiff's Fourth Set of Requests for Admissions and Request for Production of Documents was reviewed (10-pages).
>
>23. Outside vendor invoices with respect to maintenance work completed (7-pages).
>
>24. In-cab video from the subject Waste Connections Inc., 2013 MACK truck at and around the time of the subject accident (~8.5-minutes).
>
>25. Deposition testimony of the following:
>
>>a. Ladley, Bobby dated March 9, 2022;
>>
>>b. Langon, Camareas Whitney dated March 7, 2023;
>>
>>c. Lowe, Matthew Aaron dated February 27, 2023;
>>
>>d. Martin, Wesley dated March 11, 2023;
>>
>>e. Watt, Patrick dated January 30, 2023; and
>>
>>f. West, Rick dated March 13, 2023.
>
>26. Written report authored by Mr. Michael G. Kitchens of Collision Specialists, Inc, dated April 6, 2023.
>
>27. Written report authored by Mr. Jeffrey A. Kidd of Collision Specialists, Inc, dated April 6, 2023.
>
>28. Commercial Vehicle Safety Alliance – North American Standard Out-Of-Service Criteria Handbook and Pictorial.
>
>29. Federal Motor Carrier Safety Regulations.

(Id. at PageID 4960-4962.)

In reviewing the sources above, Peak drew the following conclusions:

>1. Waste Connections of Tennessee's safety maintenance on the 2013 MACK front end loader waste collection vehicle (refuse truck) was severely and grossly inadequate and directly caused and contributed to this

collision. This was evidenced by (1) our review of the vehicle history maintenance records provided in discovery by Waste Connections to the Cochran Firm, (2) review of the photographs taken during the inspection of the 2013 MACK refuse truck after this incident, and (3) the reports issued by CSI (Mr. Kitchens and Mr. Kidd) in this case. During the three (3) months preceding the collision subject of this case, employees of Waste Connections, including but not limited to, the diesel mechanics, service technicians, and drivers, consistently overlooked or ignored, visibly open and obvious conditions that would have placed the 2013 MACK refuse truck in an Out-Of-Service (OOS) condition. Their failure to identify (or act of disregarding) these conditions amounted to a gross deviation from the standard of care.

2. In review of the service and repair maintenance records, there were approximately thirty (30) opportunities in the three (3) months preceding the collision subject of this case that Waste Connections employees, including the diesel mechanics, service technicians, and their supervisors, were in a position to have readily identified and taken appropriate action in response to the open and obvious fractured suspension bracket hanger between the two left side drive axles and/or the broken and missing mounting bolts of the number two, left side brake assembly. Either of these conditions would have placed the 2013 MACK refuse truck OOS under the Federal Motor Carrier Safety Regulations (FMCSR). The failure to observe and correct these defects was a gross deviation from the standard of care, and resulted in an OOS truck remaining on the roads of Tennessee.

3. Pursuant to the FMSCR and Waste Connections' own policies, employee drivers were required to complete a pre-trip and post-trip inspection each time they drove the truck. As part of those inspections, they were required to report and record any safety defects, including but not limited to, defects in the brake and suspension assemblies. Had a properly trained and qualified driver observed the open and obvious defects present in the 2013 MACK refuse truck, those defects (1) would have been identified, (2) would have been reported to Waste Connections supervisors and mechanics, (3) would have placed the 2013 MACK refuse truck Out-Of-

Service and off the streets of Memphis, and (4) would have remained out of service until all necessary repairs were completed to restore the 2013 MACK refuse truck to a safe condition. Waste Connections' drivers' failure to conduct proper pre and post trip inspections of the 2013 MACK refuse truck represents a gross deviation from the standard of care.

4. In addition to Waste Connections' failure to observe, identify and safely repair the open and obvious defects on the 2013 MACK refuse truck, the Waste Connections diesel mechanics and their supervisors demonstrated a clear lack of training, knowledge, and experience regarding the proper installation of the Pro Torque Spindle Nut. Based upon the previously published and distributed safety recall issued by both MACK Trucks, Inc. and the National Highway Traffic Safety Administration (NHTSA) and the fact that Waste Connections trucks utilize that part, the failure to train and supervise the installation of the Pro Torque spindle nut was a gross deviation from the standard of care. Both the mechanic and his supervisor showed incompetence, inexperience, and a lack of training regarding the proper installation of the spindle nut. Waste Connections has admitted that the spindle nut was not properly installed. And there is no evidence of training regarding proper installation of the Pro Torque spindle nut until immediately after the crash.

5. Waste Connections committed a gross deviation from the standard of care in hiring, retaining, and failing to properly train Wesley Martin as a diesel mechanic. He was inexperienced at the time of his hire and untrained to perform the work at issue in this case.

6. Based on the failures set forth herein, Waste Connections through its employees and supervisors, placed the general public at a significant risk of harm and danger by continually operating an otherwise OOS vehicle on the public roads and highways.

7. Based on my experience, knowledge, and training, Waste Connections' failure to properly recognize and identify, report, and repair the visible, open, and obvious dangerous defects on the 2013 MACK refuse truck, more likely so than not, would have resulted in a separate, yet catastrophic failure. Such a failure would

>expose the general public to the risk of crash, injury, or death. The lack of proper recognition, identification, reporting and action regarding the previously mentioned defective brake system and suspension components would, more likely than not, have eventually resulted in a catastrophic event, including but not limited to, the following:
>
>>(1) a failure in brake efficiency, due to the loose brake assembly on the left, number two (2) wheel, resulting in greater stopping distance and likely causing a crash, and
>>
>>(2) a redistribution of the vehicle weight off the fractured left rear-facing load bearing spring bracket of the suspension to other non-loadbearing components, incapable of supporting the vehicles weight long term, resulting in a loss of control of the vehicle on a public road or highway, likely causing a crash.
>
>8. As documented in Mr. Kitchens' report, the 2013 MACK refuse truck did not undergo an annual inspection since September 2017. Waste Connections' failure to perform an annual inspection on the vehicle was a gross deviation from the standard of care.

(Id. at PageID 4942-4945.)

The undersigned finds that Peak's testimony is reliable, and his reasoning and methodology can be applied in this case. As outlined in the report, Peak's credentials and experience qualify him as an expert in the field of accident reconstruction. Further, his report sufficiently relied upon his independent review of the evidence in the case along with literature and regulations accepted and used in the industry.

For the reasons stated above, the defendants' motion is DENIED.

IT IS SO ORDERED.

                        s/Tu M. Pham
                        TU M. PHAM
                        Chief United States Magistrate Judge

                        November 21, 2023
                        Date